UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN T. HOAGLAND,

       Plaintiff,                              FILE NO. 5:05-CV-156

v.                                          HON. ROBERT HOLMES BELL

GROUP INFOTECH, INC. et al.,

       Defendants.
_____/

## OPINION

This is a securities fraud action filed pursuant to 15 U.S.C. §§ 77a *et seq.* and 78 *et seq.* The matter presently is before the Court on a motion to dismiss filed by Defendants William J. Ray and Hector M. Chabut (Docket #25).[1] For the reasons that follow, the motion is denied.

### I.

The following facts are taken from the first amended complaint in the light most favorable to Plaintiff.

Defendants William J. Ray and Hector Chabut were officers and directors of Defendant Group InfoTech, Inc., a Michigan corporation. Plaintiff John T. Hoagland alleges

---

[1] On January 31, 2006, the Court entered a default against Defendant Group InfoTech, Inc., after it failed to answer or otherwise defend the complaint. The Court entered a default judgment in the amount of $126,077.51 on February 15, 2006. Thus, Ray and Chabut are the only two Defendants remaining in the case.

that, from November 2003 through April 2005, Defendants engaged in a fraudulent scheme designed to get him to invest in Group InfoTech.  According to Plaintiff, Defendants made material misrepresentations and omissions and provided misleading documents regarding the financial stability, debt, solvency and profitability of Group InfoTech.  Specifically, Plaintiff alleges the following acts and omissions:

> a. Sometime after November 2003 and prior to July 1, 2004, Plaintiff received a promotional brochure from Defendants which describes the business of Defendant Group InfoTech and sets forth cash flows of Defendant Group InfoTech.  Nowhere in the brochure does it mention that Defendant Group InfoTech was experiencing financial trouble.  In fact, the cash flow statements in the brochure depicts a company in good financial condition.
>
> b. In meetings between Plaintiff and Defendant Ray and/or Defendant Chabut, during the month of June 2004, Defendants Ray and Chabut made oral representations to Plaintiff and [sic] that if he would loan $100,000 to the Company it would be repaid within ninety (90) days.  The loan was to be secured by stock in the Company, which Defendants represented to be financially sound.  Defendants Ray and Chabut and Plaintiff had several negotiations regarding the price and timing of the option that was part of the July 1, 2004 transaction wherein Defendants Ray and Chabut represented that the Company's long term prospects were financially solid.
>
> c. An e-mail from Defendant Chabut to Plaintiff, dated June 22, 2004 at 11:31 a.m. contains information forwarded from Defendant Ray.  The e-mail, which dealt with Defendant Group InfoTech, contained "the worst case cash forecast for the next seven months or so" and stated those estimates at $1,902,300.  The e-mail also states that the company "ought to enter [the first quarter] of '05 in reasonably good shape" with "minimally $3.6 million in sales."  Further the e-mail mentions that the company is seeking "investors."
>
> d. Defendants failed to disclose that in June of 2004, Defendant Group InfoTech was not paying debts when they became due as evidenced by the fact that employees filed an Involuntary Chapter 7 Bankruptcy petition against Defendant Group InfoTech on August 26, 2004 in the U.S. Bankruptcy Court for the Western District of Michigan, Case No. 04-10558jcs.

e.	Employees Kevin Hendrickson, Chris Szilagyi, and Joel Dillon asserted in the bankruptcy filing that they had not received payment for prior services rendered or fringe benefits due to employees by Company.

f.	Defendant Group InfoTech was insolvent on July 1, 2004 when it entered into the Note and Option with Plaintiff, secured by stock in the Company. In addition to the employees listed above, some of the creditors of Defendant Group InfoTech listed in the bankruptcy court case which had not received payment when due during the period June 2004 through March 2005 included:

   *	Monterex, Inc.;
   *	Hewlett Packard Financial Services Company;
   *	HTRC Joint Venture;
   *	EC Acquisition, Inc.;
   *	Granger Park Development, LLC;
   *	Donald Lawrence;
   *	Dan Warmels;
   *	Citizens Bank;
   *	Internal Revenue Service;
   *	Ninestar; and
   *	State of Michigan

g.	On September 20, 2004, at 2:09 p.m. (approximately one month after the bankruptcy petition was filed), Defendant Chabut forwarded to Plaintiff information from Defendant Ray regarding the financial condition of Defendant Group InfoTech. In the e-mail it stated that Datacom, InfoTech, Titian, and Quantum Paper, all wholly owned subsidiaries of Defendant Group InfoTech, were performing quite well. The e-mail used numbers like $1,500,000 net income, $1,250,000 net income, $250,000 net income, and a potential $1,000,000 net. In addition, the e-mail makes other positive forward looking statements about the future of the companies.

h.	At the time the September 20, 2004 e-mail was sent the involuntary petition for bankruptcy that had been filed against Defendant Group InfoTech by creditors which Defendants concealed from Plaintiff and also concealed other debts past due.

(Am. Compl., ¶¶ 8(a)-8(h), Docket #22.)

3

Plaintiff also alleges that both prior to the signing of the initial note on July 1, 2004 and prior to the Note and Option Agreement Extension dated October 20, 2004, Defendants made statements that promoted the future earning capacity of Defendant Group InfoTech and failed to mention the general insolvency of Defendant Group InfoTech and the involuntary petition for bankruptcy, which had been filed against it by creditors.[2]  (Am. Compl., ¶ 9.) According to Plaintiff, Defendants' representations were designed to induce Plaintiff to loan money to Defendant Group InfoTech and were false when they were made, as evidenced by the significant payment defaults to employees, landlord, vendors, and secured creditors at a time when Defendants were painting a rosy financial picture to Plaintiff.  (Am. Compl. ¶¶ 10-11.)  Plaintiff alleges that the financial stability, debt and profitability were material to Plaintiff because Group InfoTech's financial condition pertained to its ability to repay the loan that was the subject of the Note with Option, as secured by the company stock.  (Am. Compl., ¶ 13.)  Plaintiff also alleges that he relied on Defendants' fraudulent statements or omissions in signing the first note on July 1, 2004, and that he relied on both those statements and the September 20, 2004 e-mail in agreeing to extend the note by executing the Note and Option Agreement Extension dated October 30, 2004.  (Am. Compl., ¶ 14.)

---

[2] Plaintiff further alleges that the Non-Negotiable Secured Promissory Note with option is a security according to Section 2(a)(1) of the Securities Act of 1933 and *Reves v. Ernst & Young*, 494 U.S. 56 (1990).  Defendants do not dispute Plaintiff's allegation.  The Court therefore accepts for purposes of this motion that the Note with option is a security governed by the Securities Act and the Securities Exchange Act.

In April 2005, River Capital Markets, Inc. ("RCM"), d/b/a Quantum Graphics, foreclosed on the assets of Defendant Group InfoTech in a private sale. RCM had been in active management control of Group InfoTech prior to the sale. Plaintiff alleges that, on information and belief, some secured parties of Group InfoTech sold their claims to RCM for modest amounts on the dollar to provide RCM with a perceived base to permit foreclosure of liens. Plaintiff was not informed of the sale prior to its occurrence. On information and belief, Plaintiff alleges that the principals of RCM are insiders working in concert with Defendants Ray and Chabut, the prior owners and operators of Defendant Group InfoTech. (Am. Compl., ¶¶ 15-20.) After the sale of assets by Group InfoTech to RCM, Defendants Ray and Chabut continued the day-to-day operations of the company, while asserting that all unsecured debt, including Plaintiff's debt that was secured by stock or stock options, was uncollectible and unenforceable against the new entity. (Am. Compl., ¶ 20.) Plaintiff alleges that, absent Defendants' fraudulent scheme, he would not have loaned money to Defendant Group InfoTech, Inc. As a further result of the scheme, Plaintiff alleges he suffered a substantial economic loss. (Am. Compl., ¶ 21.)

Plaintiff claims Defendants violated Section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78a *et seq.*, and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. Plaintiff also brings state-law claims of fraudulent and innocent misrepresentation and conversion, and he seeks exemplary damages.

## II.

Defendants Ray and Chabut have moved to dismiss Plaintiff's Rule 10b-5 claim for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). They argue that, should the Court dismiss the only federal claim, Plaintiff's supplemental state-law claims should be dismissed for lack of jurisdiction.[3]

Under Rule 12(b)(6), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations repecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). A complaint fails to state a claim upon which relief can be granted when it is

---

[3]Where a district court dismisses all federal claims prior to trial, the state law claims over which a court has only supplemental jurisdiction should be dismissed without reaching their merits. *See Landefeld v. Marion General Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of North Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Because the Court concludes that Plaintiff properly has alleged a federal claim, it need not and does not reach the request to dismiss the supplemental state-law claims.

clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).

## III.

In order to state a claim pursuant to Section 10(b) of the Securities Exchange Act[4] and Rule 10b-5,[5] "a plaintiff must allege, in connection with the purchase or sale of securities,

---

[4]Section 10 provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, of any facility of any national securities exchange –

. . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.

[5]Rule 10b-5, adopted by the SEC under Section 10(b), provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b)To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *In re Comshare, Inc. Securities Litig.*, 183 F.3d 542, 548 (6th Cir. 1999); *see also Fidel v. Farley*, 392 F.3d 220, 226 (6th Cir. 2004). Prior to 1995, a plaintiff bringing a securities fraud complaint was required only to allege fraud "with particularity," in accordance with FED. R. CIV. P. 9(b). By adopting the Private Securities Litigation Reform Act (PSLRA) of 1995, 15 U.S.C. § 78u-4 & 5, Congress sought to heighten the pleading standard in order to curtail the number of groundless "strike suits." *See Helwig v. Vencor, Inc.*, 251 F.3d 540, 547-48. Under the PSLRA, in order to allege scienter in a private securities action for money damages, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PSLRA also requires that, "with respect to each act or omission alleged to violate this chapter, state *with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added).

---

      (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Under Sixth Circuit precedent, there are three distinct scienter requirements for securities fraud actions, each of which depends on the type of statement that is being made, and, in the case of "forward-looking statements,"[6] whether that statement was material and accompanied by meaningful cautionary statements. *See Miller v. Champion Enter., Inc.*, 346 F.3d 660, (6th Cir. 2003); 15 U.S.C. § 78u-5(c). First, for "forward-looking statements" that are accompanied by meaningful cautionary language, the first prong of the safe harbor

---

[6]Under the PSLRA, a "forward-looking statement" is defined as:

(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;

(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

15 U.S.C. § 78u-5(i)(1).

provision of the PSLRA makes the state of mind irrelevant. *See* 15 U.S.C. § 78u-5(c)(1)(A)[7]; *see also Miller*, 346 F.3d at 672.  If the statement qualifies as "forward-looking" and is accompanied by sufficient cautionary language, a defendant's statement is protected regardless of the actual state of mind.  Second, under the second prong of the safe harbor

---

[7]The PSLRA provides a statutory "safe harbor" for certain forward-looking statements:

> Except as provided in subsection (b), in any private action arising under this title . . . that is based on an untrue statement of a material fact or omission of a material fact necessary to make the statement not misleading, a person referred to in subsection (a) shall not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that –
>
> (A) the forward-looking statement is –
>
> (i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or
>
> (ii) immaterial; or
>
> (B) the plaintiff fails to prove that the forward-looking statement –
>
> (i) if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading; or
>
> (ii) if made by a business entity; [sic] was –
>
> (I) made by or with the approval of an executive officer of that entity; and
>
> (II) made or approved by such officer with actual knowledge by that officer that the statement was false or misleading.

15 U.S.C. § 78u-5(c)(1).

provision of the PSLRA, in the case of "forward-looking statements" that are not accompanied by meaningful cautionary language, actual knowledge of their false or misleading nature is required. *See* 15 U.S.C. § 78u-5(c)(1)(B); *see also Helwig*, 251 F.3d 552 (6th Cir. 2001) ( *en banc* ). Third, for statements of present or historical fact, the state of mind required is recklessness. *Helwig*, 251 F.3d at 552. Recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1025 (6th Cir. 1979), *quoted in PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 682 (6th Cir. 2004).

Defendants do not argue that their representations are entitled to either prong of the "safe-harbor" protection of the PSLRA. *See* 15 U.S.C. § 78u-5(c)(1)(A); *Helwig*, 251 F.3d at 554-55. Instead, they argue only that Plaintiff's allegations fail to meet the recklessness standard applicable to statements of present or historical fact.

The Sixth Circuit has outlined certain nonexclusive factors that are frequently relevant to scienter in securities fraud actions: (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7)

disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs. *Chandler*, 364 F.3d at 682-83; *Miller*, 346 F.3d at 672; *Helwig*, 251 F.3d at 552.

As stated previously, a plaintiff must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2). In *Helwig,* 251 F.3d 540, the Sixth Circuit, sitting *en banc*, construed what constitutes a "strong inference."

> Inferences must be reasonable and strong – but not irrefutable. "Strong inferences" nonetheless involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact. Plaintiffs need not foreclose all other characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder. Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences.

251 F.3d at 553.

### IV.

Defendants raise two general arguments concerning the inadequacies of Plaintiff's Rule 10b-5 claim. First, they assert that Plaintiff's allegations fail to meet the standard for pleading fraud under FED. R. CIV. P. 9(b). Second, they contend that the complaint does not state a claim under the PSLRA because it is both insufficiently particular about the dates

12

and language of the various alleged representations and because it fails adequately to allege scienter.

With respect to Defendant's first argument, the Court concludes that, by adopting the PSLRA, Congress demonstrated its intent that the heightened pleading standard set forth in 15 U.S.C. § 78u-4(b)(1) and (2) would control securities fraud complaints, supplanting the more general standard under FED. R. CIV. P. 9(b). Because it is inapplicable, the Court declines to address separately the standard and case law developed under Rule 9(b). With respect to Defendant's arguments under the PSLRA, the Court finds that, when reviewed in their entirety and accepted as true, Plaintiff's allegations are sufficient to give rise to a strong inference of fraud.

As a preliminary matter, the Court notes that Defendants' brief in support of its motion to dismiss substantially rests on two fundamental analytical errors. First, Defendants rely upon a method of analysis that isolates each of the subparagraphs of paragraph 8 of the complaint and discusses why each independent subparagraph is inadequate to prove a securities fraud violation. However, contrary to Defendants' suggestion, the Court may not isolate the allegations of the complaint and treat a single paragraph or subparagraph as independent of the others. *See Miller*, 346 F.3d at 673 ("[N]othing in the PSLRA or the Federal Rules of Civil Procedure supports a method of analysis that would require all the elements of a securities fraud claim to be stated in each paragraph of a complaint."). Instead,

the Court must evaluate the allegations as a whole in determining the adequacy of the complaint.

Second, Defendants fail to accept the allegations of the complaint as true, as a court must on a motion to dismiss. *See Morgan*, 829 F.2d at 12. Instead, Defendants attach to their motion certain of the documents described in the complaint and spend the majority of their brief arguing why those documents should not be construed as described in the complaint. (*See, e.g.*, Def. Br. on Mot. to Dismiss, at 13 ("Clearly, this document establishes . . . ."); 14 ("Plaintiff's claim that he was told that the company was 'financially solid' is belied by an email . . . ."); 16 ("[T]he involuntary petition was contested successfully, as the bankruptcy docket attached as Exhibit B establishes . . . .").) As the Sixth Circuit has repeated, "[w]hether the statements here were true or false is not an issue to be decided under Rule 12(b)(6)." *Mayer v. Mylod*, 988 F.2d 635, 639 (6th Cir. 1993) (reversing dismissal of a securities fraud complaint alleging deceptive corporate statements), *quoted in Helwig*, 251 F.3d at 558. Instead, the Court must evaluate whether the facts, as alleged, are sufficiently particular as to demonstrate a strong inference of securities fraud.

According to the allegations of the complaint, Defendants used a rosy brochure to encourage Plaintiff to invest in Group InfoTech at a time they knew the company was in financial crisis. Defendants also allegedly made oral representations during June 2004 that the company was financially sound and that, if Plaintiff would loan the company $100,000.00, he would be repaid within 90 days. Defendant Chabut sent to Plaintiff an

e-mail dated June 22, 2004, containing information prepared by Defendant Ray, which reported that the worst-case cash forecast for the next seven months was $1,902,300.00 and that the company would enter the new quarter "in reasonably good shape" with "minimally $3.6 million in sales." However, Defendants failed to disclose that, at the time they were making these representations to Plaintiff in June 2004, they were insolvent, as evidenced by the fact that they were not paying debts as they became due either to three employees who subsequently filed an involuntary bankruptcy petition in August, or to numerous creditors. Plaintiff further alleges that, in September 2004, a month after the filing of the involuntary bankruptcy petition and before Plaintiff agreed to extend the note with stock security, Defendant Chabut forwarded to Plaintiff information generated by Defendant Ray regarding the financial condition of Defendant Group InfoTech and its subsidiaries. Plaintiff alleges that the e-mail makes positive economic statements and projections about the future of the companies without disclosing the filing of the involuntary bankruptcy petition and the general insolvency of Group InfoTech, all of which related to the company's ability to repay the loan. Finally, Plaintiff alleges that River Capital Markets, Inc. ("RCM") d/b/a Quantum Graphics foreclosed on the assets of Group InfoTech without informing Plaintiff, and that Defendants Chabut and Ray thereafter continued to operate the company while disavowing the debts.

These allegations, if true, create a strong inference that Defendants acted at least recklessly in their statements to Plaintiff concerning the then-existing financial state of Group

Info-Tech. *Helwig*, 251 F.3d at 562. While the factors identified by the Sixth Circuit are not all directly applicable, since the instant action does not involve the kind of stock share purchase transactions ordinarily in issue in Rule 10b-5 cases, various factors are present or analogous to the facts alleged by Plaintiff.

The first factor, the existence of insider trading at a suspicious time, *PR Diamonds*, 364 F.3d at 682; *Helwig*, 251 F.3d at 552, is not directly involved in the kind of violation alleged here. However, the second factor, the divergence between internal reports and external statements on the same subject, *id.,* is relevant. According to the allegations, at the time Defendants made representations to Plaintiff about the company's prospects and outlook in June 2004, the company was not paying either its employees or certain creditors. Such a divergence in the information disclosed and the information possessed is the kind of divergence contemplated by the second factor. Similarly, Defendants' September representations, which did not disclose the pending involuntary bankruptcy action, constitute a divergence within the contours of the second factor.[8]

---

[8] Defendants disingenuously cite an unpublished Sixth Circuit opinion for the proposition that "the filing of a bankruptcy petition by itself does not a security fraud allegation make." *D.E.&J. Ltd. P'ship v. Conaway*, 133 F. App'x 994, 1000 (6th Cir. 2005). The proposition identified in *Conaway*, however, is whether the filing of a bankruptcy petition at some point *after* representations about future expectations have been made demonstrates securities fraud. The case does not support or suggest that a company may paint an unqualifiedly rosy picture of its future prospects without disclosing that it is the subject of a pending involuntary bankruptcy petition.

The third factor, the closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information, *id.*, is not adequately alleged on the facts of the case. Plaintiff does not indicate when he was made aware of the involuntary bankruptcy in relation to the time he signed the Note and option in October 2004. Further, Plaintiff has not alleged evidence of any bribery by a top company official, the fourth factor. *Id.* The fifth factor, the existence of an ancillary lawsuit charging fraud and the company's quick settlement of the case, *PR Diamonds*, 364 F.3d at 682-83, arguably is related by analogy to the instant situation, in which an involuntary bankruptcy petition was then-pending, a petition Defendants sought to resolve quickly.

The sixth factor, disregard of the most current factual information before making statements, *PR Diamonds*, 364 F.3d at 683; *Helwig*, 251 F.3d at 552, is most directly applicable to the current situation. An unqualified optimistic projection during a time the company is not paying its bills and is the subject of an involuntary bankruptcy petition would unquestionably be a statement made in disregard of the most current factual information.

Neither the seventh factor, involving confusing accounting disclosures, nor the eighth factor, involving communications with disinterested directors, is involved in the instant case. The ninth factor, however, is implicated. That factor, the self-interested motivation of defendants to save their salaries or jobs, *id.*, squarely is placed in issue by Plaintiff's allegation that Defendants failed to disclose to Plaintiff a sale of company assets to RCM under which Defendants Ray and Chabut were permitted to continue to run the company

17

while simultaneously ridding the company of its unsecured debt. Defendants' participation in such a transaction clearly implicates their personal job interests, as contemplated by the ninth factor.

In sum, Plaintiff has alleged numerous factors identified by the Sixth Circuit as tending to support a strong inference of at least recklessness. Taking the allegations as a whole and accepting them as true, the Court finds that Plaintiff's complaint meets the pleading standard of the PSLRA.

## V.

For the foregoing reasons, the Court will deny Defendants' motion to dismiss. An order consistent with this opinion shall be entered.

Date:     June 5, 2006            /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  CHIEF UNITED STATES DISTRICT JUDGE